Good morning, Your Honors. My name is Zane Hilton. I represent the plaintiff appellant Dr. Christian Head. Before I begin, I'd like to reserve two minutes for rebuttal. Sure. May it please the Court. This appeal arises out of multiple motions for summary judgment before discovery in which there are both significant substantive legal problems and procedural deficiencies which have resulted in prejudicial error. I'd like to begin with, if I may, talking about the main procedural deficiency and that is the failure to grant discovery before holding multiple summary judgment motions. This here is a clear and manifest abuse of discretion. It should be noted that the Court did not decide purely legal issues, but rather these were at best hybrid questions of fact and law. It should also be noted that plaintiff did comply with the mechanism for him to request more discovery in these cases, a 56D declaration. And this 56D declaration did comply with the procedural requirements required, that is to say authoritativeness, timeliness, good cause, utility, and materiality. And even if he doesn't quite meet the standard for a 56D motion, this Court's precedent in Burlington Northern Railway said the standard is lesser when there has been no discovery. Let me ask you this. I'm a little troubled by the district courts not allowing any discovery, but there are a couple of issues in this appeal that appear not to need discovery. They could be just decided as questions of law based on what was alleged in the complaint. Your Honor, I believe that. So, for example, the exhaustion question. Well, on the issue of exhaustion, the standard is would a reasonable investigator look to the claim as arising out of the AOC charge? Or did the investigator actually investigate those claims? And here there is some evidence to suggest that the investigator did or should have investigated race-based claims off the 2011 charge. Dr. Head pointed him to testimony and documents that explicitly said, hey, this case is about race. The VA, there is a problem with discrimination against minorities and women. So you wanted to depose the investigator to find out if he actually looked at race? Yes, Your Honor. And also, I think the record by itself already indicates that a reasonable investigator would have. And so on the issue of whether it's a… If you look at it objectively as a reasonable, as any reasonable investigator in light of the charge, why do you need discovery to answer that question? Well, because there's also the other standard. Did the investigator actually look into it? And so if you have discovery into what the investigator actually found and if he didn't actually investigate race but should have based on the documents he was provided, then a reasonable investigator should have. So I think discovery would be necessary to sure up that administrative requirement. Okay. So from your perspective, discovery was essential to… The district court should have permitted some discovery before addressing any of the summary judgment motions. Yes, Your Honor. Okay. Well, your Rule 56D affidavit was not very detailed, was it, in terms of what you hoped to discover and exactly whom you wanted to depose and so forth? It's pretty generalized. I mean, it's only like two and a half pages, something like that, isn't it? Yes, Your Honor. But under the Burlington National Railroad standard, when you have no discovery, the Burlington court held that you don't need to be as detailed because there's no discovery to lay the predicate or the groundwork for a detailed 56D declaration. All right. By the way, you said there was no discovery. How did this no discovery situation come about? Did the judge issue an order right off the bat to file a complaint that there will be no discovery in this case, or how did it come about? So my understanding is there was a complaint and a motion to dismiss, then an amended complaint, and then another motion to dismiss, and then I believe there was a second amended complaint, a motion to dismiss. On the basis of that motion to dismiss, the judge ordered, rather than rule on the motion to dismiss, he ordered a motion for summary judgment before the 26F conference. And then following that first summary judgment motion, the judge ordered a second summary judgment. And how much time elapsed between the filing of the complaint and the time of that conference? I do not know, Your Honor, because the motions to dismiss precluded the 26F conference. Precluded what? I think because there was no 26F, I do not know the exact period of time off the top of my head. I'm drawing a complete blank. It was, I believe, a matter of several months to perhaps over a year. But because there was no 26F conference, there could be no discovery without leave of court pursuant to the FRCP. And again, the specific facts or evidence relevant to Dr. Head's claims, that discovery would have yielded, would have been what in your view? Well, for the race-based claims, information into what the investigator actually looked into, the EEOC via subpoena or deposition, into the retaliation-based claims, emails between the supposed retaliators into the conspiracy claims, those same emails, documents of performance evaluations, depositions of the actual alleged bad actors, Dr. Wong, Dr. Bider, Dr. Norman, all the sorts of things that are necessary to prove up one of these very fact-intensive discrimination cases. These sorts of cases are very fact-intensive. Both this court and the California Supreme Court ruling on FIHA, which is California's equivalent to Title VII, has said that these cases are proved by a boatload of circumstantial evidence. Was there a motion for reconsideration after the judge ruled? There was one on the conspiracy claim. I do not know if there was one more generally. Pending discovery? I do not believe there was one pending discovery. There was a 56D, and I believe that was the end of it. But my knowledge of the record is not encyclopedic on that point. But my understanding is there was a 56D motion and a motion for reconsideration only as to the judge's legal ruling for the 1985 claim. I do not believe there was a motion for reconsideration on the issue of discovery. But even if this 56D motion was procedurally inadequate, I believe it is still an abuse of discretion to deny discovery before an MSJ. The Celotex case, the seminal Supreme Court case on motions for summary judgment, says a motion for summary judgment must be predicated upon adequate discovery. Of course, adequate discovery is going to vary from case to case. But in one of these discrimination cases, it cannot be the case that the answer to the question, what is adequate discovery, is none. The Eighth Circuit has wrestled with this question in the Wilmar Poultry case, and it has articulated a rule that an MSJ is only appropriate before the close of discovery when a plaintiff could not articulate how discovery could cure the deficiency that gave rise to the summary judgment. Here, Dr. Head articulated several theories that, with the benefit of discovery, could have him prevail on summary judgment. It should be noted that several of the claims were determined on the merits. The conspiracy claim, the reprisal claim, and the harassment claim as it was linked to reprisal. Excuse me. Also, these administrative exhaustion reasons are also a hybrid question of fact and law. And so it was wholly, I believe, an abuse of discretion to not allow plaintiff to investigate the factual underpinnings. Why weren't Dr. Head's race discrimination claims unexhausted? Because they reasonably relate to the 2011 claim, to the EEOC charge, because he told the investigator, you should look into my race-related claims. That's what this is all about. And, of course, this is a continuing course of conduct over the course of 10 years. It's all the same sort of discrimination. All three charges relate to the same series of events. He's subjected to discrimination. He complains about it. He's subjected to further discrimination and retaliation for his complaint. He complains about it. And he's subjected for more reprisal for his race-based complaints. And he complains about it. And that third complaint is the 2011 EEOC charge. And that charge is what gives rise to this lawsuit. Now, regarding the question of whether Dr. Head was impeded from participating in his proceedings or testifying, doesn't the record show that he participated in his EEOC proceedings, submitted at least five declarations in the federal proceedings, and testified at the 2016 evidentiary hearing? In what way, in your view, was he impeded from participating in proceedings? Well, Your Honor, actual deterrence from a 1985 claim is not required. What is required is harm from the attempted deterrence. Like any conspiracy claim, it requires an active furtherance. What's the harm here? He suffered the record reflects that he suffered significant medical issues as a result from the stress of the attempts to impede his testimony. High blood pressure. Even though he was not actually impeded? Yes, Your Honor, because they attempted to impede him. They subjected him to treatment with the aim of impeding him from testifying. And that conduct with the aim of impeding from testifying caused him harm, even though it did not actually impede him. Doesn't the harm have to be harm that's associated with the proceeding? It has to be harm that comes about as a result of the attempt, Your Honor. It's my understanding, according to this court's ruling in— I'm sorry, I've lost the case site. But this court has held that actual deterrence is not required, merely tortious harm. So economic or non-economic harm as the result of the conduct. I would also like to note that this court has ruled in David v. U.S. that someone like Dr. Head would not have standing for a witness in another claim. Bower's claim? Yes, yes, Your Honor. And I would just note that I believe that David v. U.S. misreads the statute. And that's based upon a couple of things. The first is obviously a plain reading of the statute. But, namely, this would lead to kind of absurd results. It would mean that the United States could be the only person to initiate a claim over testimony before the grand jury, which is a protected classification under Section 1985. Also, if you look to the Ku Klux Klan Act, which is the precursor to Section 1985 through the recodification, and the Supreme Court has said the recodification was not intended to change the Klan Act in terms of its meaning, the Klan Act says a person so injured shall have right to sue. There is no distinction when a person is injured by a conspiracy to deter the person so injured. We're not, as a three-judge panel, I don't think we can say we disagree with David's panel's holding. We would have to look if there's higher authority. Yes, Your Honor. Either through an en banc opinion or through the Supreme Court or through some statutory revision. Yes, Your Honor. I gather the only case that might, is the Supreme Court's decision in, is it Haddle? Is that the case? Hefferman, which is a Tenth Circuit, and then Cush v. Rutledge, which is the Supreme Court case interpreting the changes to the Klan Act, which would, I believe, through a reading of that case, negate David v. U.S. Or undermine. You have to say it undermines. Undermines, yes. Pulls the rug out from under it, so to speak. Yes, Your Honor. Getting back to the injury question, can you cite a case for me that holds that emotional injury is the only injury required? I believe I did in the brief, Your Honor. You think it's in your brief? Give me a page. Can you give me a page and give me a brief, some kind of citation? It would be in the last five pages, Your Honor. All right, that's fine. Rutledge v. Arizona Board of Regents. Rutland? Ruth Rutledge v. Arizona Board of Regents says a claimant need not suffer monetary damage to have an energy cognizable under Section 1985, Subsection 2, and that's 859F2D732, and that quote is at 735. Is that one of our cases, the Ninth Circuit case? Yes, from 1988, and it is citing a Third Circuit case. With that, I see that I'm very close to the end of my time. I'll give you some time for rebuttal. Are there any further questions from the panel? Not at the moment, thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Assistant U.S. Attorney Chung Han on behalf of Defendant Appellee Robert Wilkie, Secretary of the Department of Veterans Affairs. First, Your Honors, I would like to address the discovery issue, and it is very limited here in nature. It was raised once in this three-year litigation in a footnote on the caption page of the appellant's opposition to the initial summary judgment motion. There is no order in this case denying discovery. If an appellant truly believed that discovery was necessary, then there is a procedural mechanism in which he could have requested it. He could have asked for a stipulation. In the district court's order, there was a request made for discovery, and the district court said no. Yes, Your Honor. That was only in that one motion, and that was that first motion. And I'd like to focus on – The district court was pretty clear. Well, it was as to that motion, it was a 56D request. He did not make a motion under 26D1 in which he could have requested discovery or he could have asked opposing counsel to take discovery. But other than that one time in this entire case, which spanned three years, a discovery request was made once, and it was never raised again. And when appellant moved for reconsideration of the district court's order, there was no mention of the lack of discovery in that motion for reconsideration. It was dropped. And as to that 156D request, the only thing they appealed is as to that first order, that October 27, 2015 order. And in that order, a review of the order reveals that the government lost on every single factual issue that was raised in that order. Therefore, the appellant cannot show actual prejudice, let alone actual and substantial prejudice. And in that first order in which the government prevailed, were purely legal issues that were before the district court. And the first was about the – There were motions here or meeting before the district court, right? No. There were motions to dismiss. That would happen? That's correct, Your Honor. And then the district court said, oh, it looks like we can resolve this case on summary judgment. No, that's not – I don't think that's a fair representation of what the district court did. How did the court get from a motion to dismiss to summary judgment? So the district court said, instead of deciding this on a motion for dismiss, I'd like to see it as a motion for summary judgment. Usually under a case law, that usually means you get some discovery. That's correct. But if you look at that first order, there were no fact-based issues where the court ruled. Then why did the district court find it necessary to treat it as a motion for summary judgment? That would likely be a question for the district court. Well, you were there. You were litigating the case. Maybe you wanted – Did you suggest that there were no tribal issues of fact on that motion? Likely in the motion, yes, we did. But, again, we didn't prevail on those issues. Instead, the district court continued to litigate this case and gave – and the district court was actively involved in the litigation of the case. We're familiar with Judge Wilson. He's a very – he takes control of the cases and he moves them along. I think there's a Ninth Circuit case that's referred to as Rocket Docket that Judge Wilson is known for. Well, this was no Rocket Docket. This was three years. And we had so many opportunities to bring these issues to the district court, and oftentimes the district court sua sponte bought issues before us. And even with that initial summary judgment motion, there was supplemental briefing because the district court had questions that he didn't feel that the parties had addressed. Didn't Dr. Head describe the information to be sought during discovery? Only in that one declaration, Your Honor. And why wasn't that adequate? Well, it didn't – the district court found that it lacked a specificity. But in addition to that, the reason why it wasn't adequate and why it's not relevant here is because the issues that he raised in that declaration weren't decided. And counsel cited multiple times to the Burlington Northern case. But in that case, it was because before discovery had been completed, the party that brought the summary judgment motion prevailed. And here that's not true. The party that brought the summary judgment motion on that brief in which the 56D request was made did not prevail. We lost. And what was the reason there was no Rule 26 conference in this case? You never reached that stage, right? Yes, Your Honor, because the case kept progressing. I mean, if you look at – The case kept progressing. Judge Wilson kept channeling in a certain direction. In effect, you know, he channeled such that plaintiff couldn't even ask for a 26 – Rule 26D conference, right? Because, you know, he said motion to dismiss, motion to dismiss, summary judgment, next summary judgment, next summary judgment. I mean, he had it all scheduled out that way. I would disagree with that characterization, Your Honor. And the reason why I would is because there were ex parte applications that were made during this case. There were stipulations that were made during this case, and Judge Wilson ruled on those. I mean, the appellant could have brought a Rule 26D motion for discovery or he could have requested a status conference. But the fact is, after that one request and that one footnote on the first opposition, discovery was never raised again. What do you mean footnote? It's more than a footnote. And it's more than a footnote in Judge Wilson's order. I mean, one of the specific lines of the order, you know, the request for the Rule 56D discovery is denied, period. Right. The request was made in a footnote, Your Honor, on the caption page of the opposition. There is nothing in the briefing regarding the request. And there was a declaration that was submitted in support of it, and that's what the district court ruled upon. But it's in all of the other opportunities that he had, and including in that motion for reconsideration. The appellant could have asked for a review of that discovery order, and that would have been another mechanism to bring the lack of discovery to the Court's attention. But the reason why it was never raised again, in spite of the multiple opportunities to do so, including, and I may add, like in the reply brief, appellant cites this office move that occurred, but that occurred in August of 2014. And the district court actually requested that, after the two-day evidentiary hearing, he made a ruling on when the initial contact for EO contact was made, but the district court said, you know what, I'd like some more ruling on this exhaustion issue. And it was briefed again, and the appellant opposed that brief, and there was no Rule 56D request as to that brief. And therefore, it's waived. It's only relevant, the request for discovery that's preserved for appeal is only relevant as to that first request that was made at the very beginning of this litigation. And one of the reasons, Your Honor, I would submit, why there was no request for discovery is because there was a surfeit of information in this case. I mean, even though the actual EO complaint, the 2011 EO complaint, that's at issue here, was very limited. And, you know, counsel spoke a lot about the race discrimination claim, but he had brought race discrimination claims before against the VA, but this time he did not. And the person that they keep bringing up again and again is Dr. Wong, but she was not named as a responding management official in this case. And there are no allegations of race against her at all. So they're all claims that they're made up after the fact, and, you know, in their moving brief, they describe this case as a Gordian knot. Well, if it's a Gordian knot, it's because they kept bringing in so many superfluous facts and allegations that didn't go to what was exhausted. And what was exhausted, the district court ruled on it, and the reason it took the district court such a long time is because there was so much information out there, and we had to unravel. The purpose of the evidentiary hearing? The evidentiary hearing was what was stated in the October 27, 2015 order. What the district court said was he said he's going to deny the government's motion on timeliness, he's going to deny the government's motion on exhaustion, he's going to deny the government's motion on retaliation, and he said those issues can be brought up at the evidentiary hearing. And in addition to that, the district court specifically said we can also— Say that again? Those issues can be brought up at the evidentiary hearing? Correct. And the district court also said to Pellant, you know, I understand you have all these allegations that go back a long period of time. If you would like to bring—claim a continuing violation doctrine, please do so. Let's hear that at the evidentiary hearing as well. And prior to the evidentiary hearing, there was extensive briefing again, and the parties submitted documents, they wrote briefs, they said who would testify. Was the evidentiary hearing in lieu of a trial? No. The evidentiary hearing was for the district court to decide when initial EEO contact was made. So that had to do—because even though all the documentation stated that the contact was made in October of 2011, Dr. Head alleged it was made earlier. So that's one of the things that the district court wanted to decide. And the district court also wanted to hear about— Like a jurisdictional— Correct. Correct. Termination. Correct. And again, that was another opportunity for Pellant to have requested discovery if he believed it was necessary. But he didn't. If you look at this 3,000-page record, you will find that request for discovery one time, and you will find it in that one footnote. And that is the only place it appears anywhere in this record. Okay. So did you want to address some of the substantive issues? Yes. I would like to, Your Honor. The exhaustion issue? I would. And I would like to address the race exhaustion issue. Because what Pellant is arguing is that some oblique comments that he made to the EEO investigator should have given that investigator reasonableness to investigate a race discrimination claim. This is when there's no race discrimination box checked on the complaint. This is where the events that are alleged in the complaint do not have any allegations regarding race. And this is after the district court had a long, extensive interview with Dr. Head, where the district court went through every charge that was at issue here in this administrative complaint. And as the district court noted, at the end of every question the EEO investigator said, did we cover everything? Is there anything else? And Dr. Head always said no. And then at the very end he says, oh, I think there's something you should look at. I think that's very important. Didn't this all arise out of his race claims, though? Isn't that what this whole thing is about? No. No? No. He only brought one race claim at the VA, and that was in 2004. And that was it. And that was against his then-supervisor, Marlene Wong. He brought another EEO complaint in 2008 against his then-supervisor, the chief of surgery, Matthias Stelsner. And that only raised one retaliation claim. Then he brings another retaliation claim against the chief of staff, Dean Norman, in 2011. And that is the operative complaint. And the reason why there's so much confusion is because around the same time, Dr. Head was bringing a lawsuit against UCLA. And that lawsuit was going on, and it got a lot of press. It got publicity. And that was settled in 2013. That was a race-based claim. Yes. Yes. But, you know, we have requested judicial notice, in this case, of that complaint. Because if you read it, you can see that he's trying to bring the same complaints that he had alleged against UCLA actors against the VA. And that's what was the basis for those motions to dismiss. That would suggest that his claims at the VA were race-based as well. No. No? Your Honor, because they're not the same actors. The only responding management official he checked at the VA was Dr. Norman. And he does not make any racial allegations against Dr. Norman. If he wanted to make a race-based claim here in this instance, he could have done so. He could have checked the box. He could have told the investigator. He could have done all of these things. But he did not. So the only issue that was before the district court was the retaliation claim. And other exhaustion and timeliness claims that came out of that. Aren't we supposed to construe administrative charges liberally? Yes. But here, there's nothing more to—it wouldn't be that liberal. You couldn't go to a completely different claim. And the district court actually cited those cases why you couldn't. Because they're very discreet. A retaliation claim is discreet from a race discrimination claim. And if you look at the charges that are brought that are at issue in this complaint, those 10 issues, none of them have to do with race. There is no reason why any reasonable investigator should have looked at any other issue. And there's actually no reason why this investigator should be interviewed because the record is complete. That affidavit is complete, and the whole administrative record is complete. Now, we've read your brief. What is your home run case on this exhaustion point? What is the best precedent that you would cite? Most analogous to the situation before us. It would be one of the cases that the district court cited, Your Honor. It would be in that order. I did not write it down. I think it's the— Okay, we can let that go. I apologize. Any other questions, Your Honors? Not at this time. Thank you, Your Honors. Do you have a minute? Thank you, Your Honor. I'd like to first state that I think it is an abuse of discretion of the district court to deny discovery outside the 56D declaration. It is an abuse of discretion in and of itself. And I think the brief makes plainly clear the arguments for that. And the comment— The counsel did make a point that to the extent you did make a 56F objection, it's only one time. What about the second motion for summary judgment? Did you make another request? No, Your Honor. Why not? I do not know. I wasn't the lawyer on the case. Does that doom you, so to speak? I don't believe so because I think the denial of discovery is an abuse of discretion in and of itself. And also, if I was the lawyer in that situation, perhaps on the basis of the first declaration being— or the first 56D to 56F motion being denied, I would believe that further attempts would be futile because the court has made its position quite clear. There's going to be no discovery on these issues. You haven't laid the groundwork for it. What do you mean by made it quite clear? Well, the judge's order. There's only one order, right? Yes, Your Honor. And as the government says, it pertained only to the— it was only an order on the first motion for summary judgment. Yes, but if you look to the wording of the order, the court— trial counsel believed that they had laid the necessary groundwork, and then the court denied it. And so I can't speak for the trial counsel. The actual—I'll tell you, the ordering language says something like—let's see on the last page. All it says simply is that the Rule 56D motion is denied, right? For the aforementioned reasons, the court denies the plaintiff's Rule 56D request. So all it was doing was denying that specific 56D request. You didn't say, Ann, you can't make any discovery in this case without my permission on any other motion. You didn't say that, right? No, Your Honor, but the combination of the denial of the 56D request and it being prior to the 26F conference, I think paints a pretty clear picture that the judge wanted to rocket dock at this case. Well, now, I said that, but that doesn't necessarily mean Judge Wilson here did take— took a chunk of the case and tried to figure out the most efficient way to resolve it. And in so doing— And looks like there's a lot of— like there were a lot of facts that people weren't going to dispute. There were some facts that are not in dispute, but I think the standard needs to be, could there exist any facts in the realm of, you know, potentially discoverable facts that the plaintiff could induce through discovery that would lead to the denial of summary judgment? And I think it's clear in this case that those facts could exist. And you have to look at the relative ignorance of the parties or the relative access to documents. In these sorts of cases, a plaintiff has very little access to documents and the defendant employer has access to all the documents. Okay. I'll let you go over your time. Yes, thank you for that comment. Thank you very much. Matters submitted, thank you for your arguments. We appreciate your arguments this morning on both sides.
judges: Tashima, Paez, Katzmann